IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ARNE OLSON,

Plaintiff,

v.

OPINION and ORDER

FRANK BISIGNANO,
Commissioner of the Social Security Administration

25-cv-765-jdp

Defendant.

---

Plaintiff Arne Olson seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Olson was not disabled within the meaning of the Social Security Act. Olson contends that administrative law judge (ALJ) Catherine Ma erred by failing to adequately explain two things: (1) why she believed that Olson could perform the job of an insurance salesperson as it is generally performed in the national economy; and (2) why Olson's vision impairments do not limit his ability to work.

The court concludes that the ALJ did not adequately support her finding that Olson could work as an insurance salesperson, so a remand is required. The ALJ will also need to reconsider the extent to which Olson's vision impairments limit his ability to work.

## BACKGROUND

Olson applied for disability benefits, alleging disability beginning in May 2022, when Olson was 57. R. 26, 470.[1] After a hearing, the ALJ found that although Olson suffered from a spine disorder and amputation of his left leg below the knee, he nevertheless could perform light work with some additional physical restrictions. R. 28–29. Relying on the testimony of a vocational expert (VE), the ALJ found that Olson was not disabled because he could perform his past relevant work as an insurance salesperson, as the job is generally performed in the economy.

Olson now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Olson asserts that the ALJ made two errors. First, he says that the ALJ incorrectly classified his past work as that of an insurance salesperson. Second, he says that the ALJ should have included restrictions in the RFC assessment related to his vision impairments.

---

[1] Record cites are to the administrative transcript located at Dkt. 3. Citations to other filings use the page numbers assigned by CM/ECF, not the page numbers in the original document.

**A. Ability to do past work**

An ALJ's determination regarding what jobs a claimant can perform is divided into two steps. First, the ALJ considers whether the claimant can perform jobs he previously has performed, what the Social Security regulations call "past relevant work." *See* 20 C.F.R. § 404.1560(a)(1). A claimant is not disabled if he can perform a past job, either as he actually performed the job or as the job is generally performed in the national economy. *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019); 20 C.F.R. § 404.1520. Second, if the claimant cannot perform his past relevant work, the ALJ considers whether he could perform other jobs that exist in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c); *Herrmann v. Colvin*, 772 F.3d 1110, 1112–13 (7th Cir. 2014).

In this case, the ALJ determined that Olson was not disabled because he could perform his past relevant work as an insurance salesperson as that job is generally performed. R. 32. The ALJ did not determine whether Olson could perform any past relevant work as he actually performed it or whether he could perform other jobs in the national economy, so it is not necessary to consider those issues here.

In concluding that Olson could perform the job of an insurance salesperson, the ALJ relied on the testimony of the vocational expert, who had listened to Olson's description of his past job responsibilities during the administrative hearing. The vocational expert concluded that Olson's past work in the insurance industry was properly characterized as an insurance salesperson, corresponding to Dictionary of Occupation Titles (DOT) listing 250.257-010. R. 77. Olson's counsel did not object to the vocational expert's classification.

Olson now says that the ALJ did not adequately explain why she concluded that Olson's past relevant work includes work as an insurance salesperson. Olson raises three objections: (1)

the ALJ did not consider whether Olson had a composite job, which would preclude the ALJ from classifying a single DOT job as past relevant work, *see Ray*, 915 F.3d at 491; (2) the ALJ did not explain why she was disagreeing with a previous agency determination that Olson's previous insurance work was properly characterized as "special agent, group insurance"; and (3) the ALJ relied on the vocational expert rather than determining for herself how Olson's past relevant work should be classified. In response, the commissioner says that Olson forfeited this issue by failing to object during the hearing and that there is no obvious conflict between the vocational expert's testimony and the DOT. In his reply, Olson says that he did not forfeit the issue for two reasons: (1) he raised an objection with the Appeals Council; and (2) his failure to object did not result in forfeiture under the circumstances of this case. The court agrees with the second contention, so it is not necessary to consider the first.

The court of appeals has held repeatedly that a claimant such as Olson who was represented by counsel during the hearing can forfeit an objection to a vocational expert's testimony if the claimant's lawyer does not raise that objection during the hearing. *Cain v. Bisignano*, 148 F.4th 490, 499–500 (7th Cir. 2025); *Schmitz v. Colvin*, 124 F.4th 1029, 1032 (7th Cir. 2024); *Leisgang v. Kijakazi*, 72 F.4th 216, 219 (7th Cir. 2023); *Fetting v. Kijakazi*, 62 F.4th 332, 337–38 (7th Cir. 2023). But the Supreme Court has stated that "an applicant cannot waive the substantial evidence standard," *Biestek v. Berryhill*, 587 U.S. 97, 104 (2019), and the court of appeals has repeated that statement, *see, e.g.*, *Schmitz*, 124 F.4th at 1033; *Leisgang*, 72 F.4th at 219.

So how are those two principles of law harmonized? In *Leisgang*, the court held that there is no forfeiture if the ALJ "accept[s] testimony from a VE that is facially implausible or incoherent." 72 F.4th at 220. The court made a similar observation in *Schmitz*, adding that an

ALJ is entitled to rely on a vocational expert's testimony when "there are no obvious flaws in the testimony" and the claimant did not object. 124 F.4th at 1033. These cases are consistent with others that have held that a plaintiff's failure to object at the hearing does not forfeit her right to object later to "apparent" conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. *See Overman v. Astrue*, 546 F.3d 456, 463–64 (7th Cir. 2008).[2]

The rule from these cases is clear enough: if a defect is apparent from the face of the vocational expert's testimony, the ALJ has an independent duty to seek clarification or supplementation. But if the expert's testimony is reasonable on its face, the claimant must raise a contemporaneous objection.

This rule is consistent with *Sevec v. Kijakazi*, 59 F.4th 293, 298–300 (7th Cir. 2023), the case Olson relies on. In *Sevec*, the plaintiff challenged two aspects of the ALJ's determination that plaintiff could perform past relevant work as she performed it: (1) her past relevant work included work as a home health nurse; and (2) she could perform that work. The court of appeals concluded that the vocational expert's testimony was "vague, ill-explained, and equivocal," so the ALJ could not rely on it. *Id.* at 299. Specifically, the court pointed to the expert's statements that he "thought" that the plaintiff "had some home health assignments when she was with the nursing home or something like that" and that she "possibly" could perform work as a home nurse at a light level. *Id.* The court also stated that the vocational

[2] "Obviously flawed," "incoherent," and "apparent conflict" are not necessarily the same thing as a lack of "substantial evidence," but any tension between those standards will have to be addressed by the court of appeals, not this court.

expert failed to provide a basis for concluding that the plaintiff's past work qualified as "light" and that the home nurse listing in the DOT encompassed all of the plaintiff's duties.

The commissioner raised the issue of forfeiture, but the court did not include an extensive discussion of it. In a footnote, the court noted the commissioner's contention that the plaintiff had failed to object to the vocational expert's testimony during the hearing, so "she cannot now complain that the VE's testimony is insufficient to support the ALJ's disability determination." *Id.* at 300 n.32. In response, the court made the following observation:

> Ms. Sevec's counsel certainly could have taken a more active role in dismantling the VE's testimony. This is especially true with respect to the VE's conclusion that the home health care work was "light" as performed. However, as noted above, the VE could not testify, with any degree of certainty, that Ms. Sevec could perform her past work as a home health nurse. Counsel may have concluded, as we have, that such a statement could not support an adverse disability determination.

*Id*.[3]

*Sevec* did not expressly apply the Seventh Circuit's standard for forfeiture in the context of challenges to expert testimony. But the court's conclusion is in line with those cases. Specifically, the court concluded that the vocational expert's testimony was incoherent and obviously flawed. So this court will apply the standard from cases such as *Leisgang*, *Schmitz*, and *Overman* and consider whether defects were apparent in the vocational expert's testimony.

[3] In another footnote, the court of appeals also acknowledged that the claimant has the burden of proof at step four to show that he cannot perform his past relevant work. But that did not matter because "the VE's testimony is both the only support for the ALJ's decision and is substantively inadequate." *Sevec,* 59 F.4th at 300 n.35. This court understands that to mean that, even at step four, the ALJ's decision must be supported by substantial evidence, at least in the context of determining what qualifies as the claimant's past relevant work.

Olson says that the DOT's listing for an insurance salesperson is inconsistent with his past work in insurance because he testified at the hearing that he was the co-owner of the company and was responsible for marketing, advertising, coordinating mailings, and accounting, which are duties that are not included in the listing for an insurance salesperson. R. 52, 303.[4] He says that his job was a composite of different DOT listings, including the listing for "Special Agent, Group Insurance," 169.167-050, and "Manager, Insurance Office," 186.167-034. This matters because the ALJ may not rely on a DOT listing to conclude that the claimant can perform a job as it is generally performed in the economy if the past job is a "composite job," meaning that it combines "significant elements" of two or more occupations in the DOT. *Ray*, 915 F.3d at 489–91 (quoting Social Security Ruling 82-61 and Programs

---

[4] The DOT listing for an insurance salespersons identifies the following duties:

> Sells insurance to new and current clients: Compiles lists of prospective clients to provide leads for additional business. Contacts prospective clients and explains features and merits of policies offered, recommending amount and type of coverage based on analysis of prospect's circumstances, and utilizing persuasive sales techniques. Calculates and quotes premium rates for recommended policies, using calculator and rate books. Calls on policyholders to deliver and explain policy, to suggest additions or changes in insurance program, or to make changes in beneficiaries. May collect premiums from policyholders and keep record of payments. Must hold license issued by state. May be designated according to type of insurance sold as Sales Agent, Casualty Insurance (insurance); Sales Agent, Fire Insurance (insurance); Sales Agent, Life Insurance (insurance); Sales Agent, Marine Insurance (insurance). May work independently selling variety of insurance, such as life, fire, casualty, and marine, for many companies and be designated Insurance Broker (insurance). May work independently selling for one company and be designated General Agent (insurance).

Dictionary of Occupational Titles, 250.257-010 Sales Agent, Insurance.

Operation Manual System DI 25005.020)).[5] The POMS rule explains that it is inappropriate to rely on the DOT for a composite job because "[a] composite job does not have a DOT counterpart."[6]

The ALJ concluded that Olson could perform the job of insurance salesperson as it is generally performed in the national economy without considering whether he could perform the job as he performed it. So if the ALJ could not rely on the DOT listing, her determination that Olson could perform his past relevant work is unsupported.

The commissioner does not challenge Olson's testimony in which he identified the duties he performed on his insurance job. And the commissioner does not contend that the text of the insurance salesperson listing includes duties for marketing, advertising, coordinating mailings, or accounting. Instead, the commissioner says that the listing "can encompass" those duties. Dkt. 14, at 9. As for marketing, advertising, and coordinating mail, the commissioner says those duties can be inferred from the duties in the listing to compile lists of prospective

---

[5] SSR 82-61 has been superseded by SSR 24-2p, but the commissioner does not contend that SSR 24-2p modified SSR 82-61 in any way that is relevant to this case or that otherwise undermines *Ray*. Programs Operation Manual System DI 25005.020 has not been superseded and is still in effect.

[6] This rule makes sense when the DOT listings include duties that the claimant did not perform. In that situation, the listing is broader than the claimant's own job, so it cannot be inferred from the claimant's ability to perform his job that he can also perform a job with additional tasks. It is less clear why the rule should apply even when there is a mismatch because the listing includes *fewer* duties than what the claimant performed in his job. If the claimant could perform his actual job, it follows necessarily that he could also perform a job that includes only a subset of his duties. But neither the POMS rule nor *Ray* make application of the rule contingent on whether the DOT listing is broader or narrower than the claimant's actual job. In fact, one of the problems in *Ray* was that the plaintiff had performed duties that were not included in the listing. 915 F.3d at 492. In any event, the commissioner does not ask the court to narrow the application of the rule in *Ray*, so it is unnecessary to decide whether that might be appropriate in some cases.

clients and contacting clients. As for accounting, the commissioner says that duty can be inferred because the listing includes insurance salespersons who "work independently . . . for many companies," so "it follows" that the salesperson would be responsible for his own accounting. *Id.* 8–9.

The question is a close one, but the court concludes that the vocational expert's testimony has an apparent defect. The problem is not as blatant as the one in *Sevec*, but it is clear enough to overcome Olson's failure to raise it. As in *Sevec*, the DOT listing cited by the vocational expert and ALJ "make[s] no mention" of the duties at issue. 59 F.4th at 299. The commissioner in effect is asking the court to expand the scope of the listing. Marketing, advertising, and accounting might be consistent with the duties in the listing, but they are not expressly included in it. In fact, accounting is included in a different listing for "special" insurance agents. *See* DOT 169.167-050 (agent "establishes bookkeeping system for insurance plan"). That was the listing that the agency had previously determined was the best match for Olson's past insurance work. R. 177. If the vocational expert and ALJ believed that the insurance salesperson job as generally performed in the national economy included marketing, advertising, coordinating mailing, and accounting, they needed to explain the basis for that belief rather than modify the agency's previous determination without explaining why. It is well established that the commissioner may not fill gaps in reasoning left open by the ALJ. *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022). So the court concludes that a remand is necessary to allow the ALJ to reconsider what jobs Olson can perform.

**B. Vision impairment**

Olson suffers from diplopia, or double vision. The ALJ recognized this in her decision but concluded that the vision impairment was not severe because "glasses helped to get rid of

diplopia," and medical records showed that his "visual acuity was grossly normal." R. 28–29. Olson does not challenge the ALJ's classification of his vision impairments as non-severe, but he observes that the ALJ must consider limitations even for non-severe impairments, *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014), and he argues that the ALJ should have included restrictions in the RFC because of other evidence—that the ALJ did not acknowledge—suggesting that his vision impairments limit his ability to work. He cites a note from his doctor that his double vision affects his depth perception, R. 830, a note from his optometrist about complaints of blurry vision even when wearing glasses, R. 470, and his own testimony during the administrative hearing that he gets daily headaches that become more frequent when he looks at a computer screen, so he avoids screens. R. 70–73.

The commissioner's primary argument in response is that the evidence Olson cites would not preclude him from working as an insurance salesperson. But that argument assumes that the ALJ correctly characterized Olson's past relevant work as an insurance salesperson. As already discussed, the ALJ will have to reconsider that issue, so it follows that the ALJ will also have to reconsider a potential vision impairment.

## CONCLUSION

On remand, the ALJ must reconsider two issues: (1) whether Olson can perform his past relevant work, and if not, whether he can perform jobs that exist in significant numbers in the national economy; and (2) whether Olson's vision-related impairments limit his ability to work.

ORDER

IT IS ORDERED that the decision denying Arne Olson's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered August 27, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge